UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re KUPFER<br><br>KUPFER, et al.,<br>   Appellants,<br> v.<br>SALMA, et al.,<br>   Appellees. | Case No. 14-cv-00668-WHO<br><br>**ORDER AFFIRMING BANKRUPTCY COURT'S ORDER**<br><br>Re: Dkt. No. 1 |

## INTRODUCTION

This bankruptcy appeal raises the question of the extent to which attorney's fees and costs awarded against the Debtors, Konstantin and Margarita Kupfer, in a pre-petition arbitration proceeding that established the Debtors' obligation to Creditors for the breach of two leases are subject to the Bankruptcy Code's cap on claims by creditors for damages resulting from the termination of a lease.[1] The Hon. Dennis Montali of the United States Bankruptcy Court determined that the fees and costs are not capped. I agree – the fees and costs are collateral damages. The order of the Bankruptcy Court is AFFIRMED.

## BACKGROUND

The facts of this case are not in dispute. The Debtors were tenants of the Creditors under two separate commercial leases for property located at 1375–1395 Burlingame Avenue,

---

[1] The Creditors include Karim Salma and Roberta Salma as trustees of the Salma Family Trust, Lindsey S. Bruel, Riyad R. Salma, and Laith K. Salma.

Burlingame, California. Excerpts of Record ("E.R."), Dkt. No. 7-1, 35. The Debtors defaulted on each lease at different times prior to their bankruptcy petition. E.R. 39–41.

## I.     PRE-PETITION

### A.  Suite 106

The Debtors—at that time, the tenants—entered a 10-year lease for Suite 106 in March 2008. E.R. 35. They took possession on May 20, 2008. *Id.* In September 2009, they stopped paying the minimum rent due, thereby breaching the lease. E.R. 40. However, the Debtors continued to occupy the property. *Id.* The Creditors—at that time, the landlords—commenced an action for unlawful detainer on March 14, 2011. E.R. 36. The Debtors then filed counterclaims for breach of contract, constructive eviction, negligent interference with contract, nuisance, and other causes of action. *Id.* The parties later stipulated to a move-out date of May 2, 2011, and brought their disputes to arbitration under the lease's binding arbitration procedure. E.R. 36, 83–85.

In arbitration, the Creditors were awarded $241,893 for unpaid rent and late fees from September 2009 until the stipulated move-out date of May 2, 2011; $140,768.65 for rent and interest from the move-out date until the arbitration began on October 15, 2012; and $495,805 for the remainder of rent due under the lease term, ending June 30, 2019, after reductions for stipulated setoffs and discounting. E.R. 40–41. The total award was $878,466.

### B.  Suite 205

The Debtors entered a 10-year lease for Suite 205 in April 2008. E.R. 102, 104. They took possession on April 1, 2008. E.R. 36. They made their last rent payment in May 2010. E.R. 41. The property was then re-leased to a new party as of November 30, 2010, for a lease term starting December 1, 2010, and ending January 31, 2016. E.R. 41. The new tenant began paying rent on February 1, 2011. E.R. 41.

In arbitration, the Creditors were awarded $112,483 for rent and interest due until the new tenant's first rental payment on February 1, 2011, and $296,450 for the remainder of rent due under the lease term, ending March 31, 2018, after reductions for setoffs and discounting. E.R. 41–42. The total award was $408,933. The Debtors' counterclaims were denied. E.R. 43–44.

**C. Arbitration fees**

In arbitration, the Creditors were awarded $137,250 for attorney's fees and $56,934.18 for arbitration costs—a total of $194,184.18 (collectively "fees," except as otherwise stated). *See* E.R. 44–46. The arbitration award issued on June 19, 2013: adding the fees and costs to the damages for Suite 106 and Suite 205, the total award amounted to $1,481,583.18. E.R. 46.

**II.    POST-PETITION**

Almost a month later, on July 16, 2013, the Debtors petitioned for bankruptcy under chapter 11 of the Bankruptcy Code. The Creditors filed a proof of claim—a document providing proof of a "right to payment," *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 449 (2007)—with the Bankruptcy Court on September 17, 2013, based on the arbitration award. The Debtors then filed an objection to the claim based on the Bankruptcy Code's cap on claims "for damages resulting from the termination of a lease of real property." 11 U.S.C. § 502(b)(6). As applied to this case, the cap consists of unpaid rent prior to surrender, plus "rent reserved" measured at the cost of rent for 15 percent of the remaining lease period. *Id.*

With respect to Suite 106, possession of the leased property was surrendered on May 2, 2011. E.R. 36. Applying the 15-percent measurement, there were 447 days' worth of rent reserved for the remainder of the lease period. When added to the $241,893 due prior to the surrender date, this yielded a claim for Suite 106 capped at $529,511.43. Appellants' Am. Opening Br. 2–3; Appellees' Br. 5–6.

With respect to Suite 205, possession of the leased property was surrendered on November 30, 2010. E.R. 36. Using the 15-percent measurement, there were 402 days' worth of rent reserved for the remainder of the lease period. When added to the $77,527 due prior to the surrender date, this yielded a claim for Suite 205 capped at $189,708.33. Appellants' Am. Opening Br. 2–3; Appellees' Br. 5–6.

For both leases, the total capped claim for unpaid rent and rent reserved was $719,219.76. The parties do not dispute this figure. Rather, they disagree about whether the $194,184.18 in fees awarded at the arbitration also falls within that cap and cannot be claimed. The Bankruptcy Court held that the section 502(b)(6) cap is a restriction only on claims for future rent, whereas the fees

3

1  are a collateral claim to which the cap does not apply.  E.R. 171, 175–76.  It noted that the fees

2  and costs award was not rent reserved, citing *McSheridan*, 184 B.R. at 99.  The Bankruptcy Court

3  therefore allowed the Creditors' claim in the amount of $913,403.94—the sum of the capped

4  claims for rent and the claim for fees.  E.R. 176.  The Debtors then filed this appeal.

## LEGAL STANDARD

Under 28 U.S.C. § 158, district courts have jurisdiction to hear appeals of the "final judgments, orders, and decrees" of bankruptcy courts.  28 U.S.C. § 158(a)(1).  In such proceedings, "[t]he district court acts as an appellate court, reviewing the bankruptcy court's findings of fact under the clearly erroneous standard and its conclusions of law de novo."  *In re Daniels-Head & Assocs.*, 819 F.2d 914, 918 (9th Cir. 1987); *see also* FED. R. BANKR. P. 8013.  The facts of this case are not in dispute, so I will review the legal issues de novo.

## DISCUSSION

### I.  APPLICABLE LAW

Section 502 of the Bankruptcy Code provides that claims against a bankruptcy estate are "deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  Once an objection is made, the bankruptcy court will review the claim and allow it "except to the extent" it contravenes or exceeds any of the nine enumerated claims caps.  11 U.S.C. § 502(b); *Travelers Cas. & Sur. Co. of Am.*, 549 U.S. at 449.

Here, the relevant claims cap applies "if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property."  11 U.S.C. § 502(b)(6).  The amount of the cap is equal to the sum of two kinds of "rent" damages:  unpaid rent and rent reserved. 11 U.S.C. § 502(b)(6)(A)–(B).  Unpaid rent is defined as the rent due at the time of the bankruptcy petition or the property repossession or surrender—whichever is earlier—and is claimable in full. 11 U.S.C. § 502(b)(6)(B).  Rent reserved is defined as the future rent for a fraction of the lease term after this date.  11 U.S.C. § 502(b)(6)(A); *see, e.g.*, *In re Connectix Corp.*, 372 B.R. 488, 493 (Bankr. N.D. Cal. 2007) (clarifying that rent reserved is defined as rent for a fraction of the lease's remaining time and not simply a fraction of the gross future rent).  The formula for calculating rent reserved may vary according to the circumstances, but as relevant to this case, it amounts to the

4

future rent for 15 percent of the remaining lease term.[2] *See* 11 U.S.C. § 502(b)(6)(A). Because unpaid rent and rent reserved together comprise the total claims cap, and because claims for "damages resulting from the termination of a lease of real property" are allowed "except to the extent" they exceed this cap, all other lease termination damages are effectively barred.[3] *See, e.g.*, *In re AB Liquidating Corp.*, 416 F.3d 961, 963 (9th Cir. 2005); *In re Healthy Hut Inc.*, 506 B.R. 526, 531–32 (Bankr. D. Haw. 2014); *In re Denali Family Servs.*, 506 B.R. 73, 80 (Bankr. D. Alaska 2014); *In re Iron-Oak Supply Corp.*, 169 B.R. 414, 419–20 (Bankr. E.D. Cal. 1994). But since section 502(b)(6) only reaches claims arising out of lease termination, all damages collateral to lease termination are unaffected by the claims cap and may be claimed in full. *See, e.g.*, *In re El Toro Materials Co., Inc.*, 504 F.3d 978, 981 (9th Cir. 2007).

This latter distinction is at the heart of the dispute. In the bankruptcy proceedings, the Creditors argued that their pre-petition fees did not constitute lease termination damages. The Bankruptcy Court ruled in favor of the Creditors, holding that their claim for fees fell outside the section 502(b)(6) claims cap and allowing the fees in full. The Debtors argue that the fees are more accurately regarded as non-rent lease termination damages, which fall within the cap and are barred in full.

## II.   NON-RENT LEASE TERMINATION DAMAGES

Non-rent damages potentially fall within the scope of section 502(b)(6). The claims cap *amounts* to the sum of unpaid rent and rent reserved, but it *applies* to the "claim of a lessor for damages resulting from the termination of a lease of real property." 11 U.S.C. § 502(b)(6). These are two distinct concepts. Lease termination may implicate not only past and future rent, but potentially non-rent damages as well. *See, e.g.*, *In re Brown*, 398 B.R. 215, 218 (Bankr. N.D.

---

[2] The statute specifically provides for "the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease." 11 U.S.C. § 502(b)(6)(A). In this case, 15 percent of the total remaining lease term yields 447 days at Suite 106 and 402 days at Suite 205. As this is greater than one year and does not exceed three, 15 percent is the proper measure of rent reserved under the Debtors' leases.

[3] For clarity, "lease termination damages" is used throughout this order to mean "damages resulting from the termination of a lease of real property." "Claims cap" is used throughout this order to refer to the sum of unpaid rent and rent reserved, by which all lease termination damages are limited.

1   Ohio 2008) ("Refitting costs . . . clearly fall within [the] category of non-rent claims. Other
2   examples may include: repair costs, brokers' fees and taxes."). The Debtors claim that the fees
3   and costs are *non-rent* damages resulting from lease termination. Appellants' Am. Opening Br. 6;
4   Appellants' Reply 2–3.
5       The Ninth Circuit's case law on section 502(b)(6) confirms that the claims cap applies to
6   both rent and non-rent lease termination damages. In *In re El Toro Materials*, the Ninth Circuit
7   considered whether tort claims for property damage were subject to the section 502(b)(6) claims
8   cap where the tortious conduct also constituted breach of the lease. *El Toro*, 504 F.3d at 979.
9   There, the debtor-tenants abandoned one million tons of mining waste on leased property. *Id.* The
10  debtor-tenants then rejected their lease under section 365 of the Bankruptcy Code after petitioning
11  for bankruptcy. *El Toro*, 504 F.3d at 979 n.1; *see also* 11 U.S.C. § 365(a). The Ninth Circuit
12  Bankruptcy Appellate Panel ("B.A.P.") concluded that the tort claims, as breaches of the lease, fell
13  within the claims cap and were effectively barred based on *In re McSheridan*, which held that
14  lease termination encompassed breaches of every covenant in a lease, even those causally
15  unrelated to termination. *El Toro*, 504 F.3d at 981; *In re McSheridan*, 184 B.R. 91, 102 (B.A.P.
16  9th Cir. 1995) ("[T]he Panel does not believe that the damages for breach of covenants in this case
17  is a separate claim from the termination damages in general.").
18      On appeal, the Ninth Circuit held that this broad interpretation of the claims cap was
19  inconsistent with the plain language of the statute, which specifically refers to damages "resulting
20  from" lease termination. *El Toro*, 504 F.3d at 980 ("Saddleback's claims for waste, nuisance and
21  trespass do not result from the rejection of the lease—they result from the pile of dirt allegedly left
22  on the property."). The Ninth Circuit also found this reading inconsistent with the purpose of the
23  statute, which the court said was not to disfavor the claims of creditor-landlords as a class, but
24  simply to restrict rent-based claims whose magnitude might otherwise displace competing
25  creditors. *El Toro*, 504 F.3d at 980 ("[C]apping rent claims but allowing uncapped claims for
26  collateral damage to the rented premises will . . . prevent[ ] a potentially overwhelming claim for
27  lost rent from draining the estate, while putting landlords on equal footing with other creditors for
28  their collateral claims."). The Ninth Circuit therefore reversed the B.A.P. and overruled

*McSheridan* "to the extent that *McSheridan* holds section 502(b)(6) to be a limit on tort claims other than those based on lost rent, rent-like payments or *other damages directly arising from a tenant's failure to complete a lease term*." *Id.* at 981–82 (emphasis added).

The Creditors view *El Toro* as supporting the proposition that section 502(b)(6) imposes a cap on rent reserved alone. Appellees' Br. 5–6. But the Ninth Circuit's holding in *El Toro* did not purport to eliminate the possibility that non-rent damages can result from lease termination, nor did it remove non-rent lease termination damages from the section 502(b)(6) cap. The Court merely effected a correction of controlling precedent by giving meaning to the plain language of the statute, which speaks of a causal relationship between lease termination and lease damages. *El Toro*, 504 F.3d at 980. Whereas the claims cap under *McSheridan* was all-encompassing, *El Toro* narrowed the scope of the claims cap to damages which, while not necessarily "rent," are at least causally related to lease termination in the same way as lost rent.[4]

Additionally, a test already exists for determining whether charges constitute rent reserved under section 502(b)(6), and this was not the test the Ninth Circuit used to define lease termination damages in *El Toro*. The rent reserved test was established in *McSheridan*, and *El Toro* did not overrule that portion of *McSheridan*. *McSheridan*, 184 B.R. at 99–100 (holding that charges do not qualify as rent reserved unless they are (i) designated as rent or as a tenant's obligation in the lease, (ii) related to the value of the property, and (iii) fixed, regular, or periodic charges). *El Toro*, on the other hand, provided its own "simple test" for lease termination damages: "Assuming all other conditions remain constant, would the landlord have the same claim against the tenant if the tenant were to assume the lease rather than rejecting it?" *El Toro*, 504 F.3d at 981. These are two distinct tests for two distinct concepts. Notably, the test for lease termination damages is broader than *McSheridan*'s test for rent reserved, and it encompasses the possibility of both rent and non-rent lease termination damages.

---

[4] The Debtors note that *El Toro* expressly overruled *McSheridan* only with respect to certain tort claims. Appellants' Am. Opening Br. 12. However, the reasoning behind the opinion is equally applicable to the Creditors' contract-based claim for attorney's fees and arbitration costs. *See, e.g.*, *Denali Family Servs.*, 506 B.R. at 80 ("The Ninth Circuit specifically rejected any reading of § 502(b)(6) as 'a limit on tort claims other than those based on lost rent, rent-like payments *or damages directly arising from a tenant's failure to complete a lease term.*'").

7

1  The B.A.P. has rejected attempts to use the test for rent reserved as a broader test for claims allowance under section 502(b)(6).  In *In re JSJF Corporation*, the bankruptcy court disallowed a claim because it did not qualify as rent reserved under the three-part *McSheridan* test. *In re JSJF Corp.*, 344 B.R. 94, 98, 101 (B.A.P. 9th Cir. 2006), *aff'd and remanded*, 277 F. App'x 718 (9th Cir. 2008).  The B.A.P. reversed, holding that the bankruptcy court had misread *McSheridan* as not only defining rent reserved, but also establishing the test by which a creditor-landlord's claims are cognizable.  *Id.* at 101.  The B.A.P. explained, "a lessor may have an un-capped claim for something other than damages resulting from the termination of a lease." *Id.*

## III.  THE CREDITORS' FEES AND COSTS

This brings us to the issue at hand.  The parties agree that the Creditors' fees arising from the pre-petition arbitration constitute damages.  Appellants' Am. Opening Br. 8; Appellant's Reply 1.  They also agree that the fees are neither unpaid rent nor rent reserved, and are therefore non-rent damages.  Appellees' Br. 7; Appellants' Reply 7–9.  The pertinent question then is whether these non-rent damages "result[ ] from the termination of a lease of real property" under 11 U.S.C. § 502(b)(6) or are collateral to it.

### A.  *El Toro* provides the controlling test for lease termination damages, but it must be understood in context.

*El Toro* is the critical case to analyze in order to decide this issue.  There, the Ninth Circuit announced what it called a "simple test" to determine the scope of the cap for lease termination damages following a post-petition rejection of the lease:  "Assuming all other conditions remain constant, would the landlord have the same claim against the tenant if the tenant were to assume the lease rather than rejecting it?"  *El Toro*, 504 F.3d at 981.  The Ninth Circuit explained that the creditors' tort damages existed irrespective of the debtors' decision to assume or reject the unexpired lease in bankruptcy.  *Id.* ("[H]ad El Toro accepted the lease and committed to finish its term[,] [t]he pile of dirt would still be allegedly trespassing on Saddleback's land and Saddleback still would have the same basis for its theories of nuisance, waste and breach of contract.").  Because the damages in *El Toro* were collateral to lease termination, the creditors' claim fell outside the section 502(b)(6) claims cap.

Both parties interpret this test in their favor. The Creditors argue that their entire fees claim results from breach of the lease rather than termination to place the fees outside the claims cap. Appellees' Br. 10. The Debtors argue that the Creditors' fees claim results entirely from lease termination and that all damages must therefore be subject to the claims cap. Appellants' Opening Br. 9–10; Appellants' Reply 11–12. Neither is wholly accurate, since fees for unpaid rent were equally available in a separate action on the contract or in a pre-termination action for unlawful detainer.

But there is a significant distinction between the circumstances in *El Toro*, which involved a post-petition rejection of a lease, and here, where the Debtors surrendered pre-petition after the adverse arbitration award. The "simple test" does not apply easily to a pre-petition award of fees because the damages have already been awarded as a result of Debtors' breach. In *El Toro*, the debtors had the option, pursuant to section 365(a) of the Bankruptcy Code, either to assume or to reject the lease. 11 U.S.C. § 365(a). The Ninth Circuit therefore framed its test as evaluating whether damages resulted "from the *rejection* of the lease." *El Toro*, 504 F.3d at 981 (emphasis added). This makes sense in the context of *El Toro* since by definition any damages arising after an unexpired lease is assumed could not be the consequence of lease termination. In other words, there could be no "claims based on lost rent, rent-like payments or other damages directly arising from a tenant's failure to complete a lease term." *Id.* at 982. Not so here, and the Debtors' argument is too facile as a result. They want to unring the bell by arguing hypothetically about what the Creditors would have done if only they had not terminated the lease and instead assumed the lease post-petition.

If the "simple test" in *El Toro* has any applicability, the Creditors have the better side of the argument. But in the pre-petition context, another portion of *El Toro's* reasoning, discussing other characteristics of collateral damages, is clearer and leads more readily to the correct result in this case:

> The structure of the cap--measured as a fraction of the remaining term--suggests that damages other than those based on a loss of future rental income are not subject to the cap. It makes sense to cap damages for lost rental income based on the amount of expected rent: Landlords may have the ability to mitigate their damages by re-

9

> leasing or selling the premises, but will suffer injury in proportion to the value of their lost rent in the meantime. In contrast, collateral damages are likely to bear only a weak correlation to the amount of rent: A tenant may cause a lot of damage to a premises leased cheaply, or cause little damage to premises underlying an expensive leasehold.
>
> One major purpose of bankruptcy law is to allow creditors to receive an aliquot share of the estate to settle their debts. Metering these collateral damages by the amount of the rent would be inconsistent with the goal of providing compensation to each creditor in proportion with what is owed. Landlords in future cases may have significant claims for both lost rental income and for breach of other provisions of the lease. To limit their recovery for collateral damages only to a portion of their lost rent would leave landlords in a materially worse position than other creditors. In contrast, capping rent claims but allowing uncapped claims for collateral damage to their rented premises will follow congressional intent by preventing a potentially overwhelming claim for lost rent from draining the estate, while putting landlords on equal footing with other creditors for their collateral claims.(footnotes omitted). Id. at 980.

Applying that analysis here, it is clear that the pre-petition fees and costs are collateral damages and are necessary to put landlords on equal footing with other creditors. The fees and costs bear only a weak correlation to the amount of rent owed. Debtors can choose when to file their bankruptcy petition, potentially obviating the need for litigation, and how aggressively to litigate (or as here, arbitrate) pre-petition lease obligations. To cap a landlord's claim to exclude fees and costs would put the landlord in a materially worse position than other creditors who obtained judgments because they were damaged by a debtor's conduct, particularly those who may have received attorney's fees awards in a different case. If the Debtors had filed their bankruptcy petition before litigation, there would be no pre-petition damages for litigating the breach. Their decision to wait until the conclusion of the arbitration to file their bankruptcy petition significantly impacted the landlord's damages. The arbitration panel determined that the fees were necessarily incurred, and awarded them pre-petition. Having chosen their strategy, the Debtors cannot avoid an award for the pre-petition fees.

The parties do not identify, and I could not find, a bankruptcy case regarding attorney's fees that is directly on point. The Creditors best case is *In re MDC Systems, Inc.*, 488 B.R. 74, 80–81, 87, 94 (2013), a decision that allowed fees and costs arising from a pre-petition state court judgment against the debtor-tenant, in support of their argument that the fees at issue should not be

capped. Appellees' Br. 8. But the bankruptcy court noted, unlike here, that "[t]he damages accrued while the Debtor was still obligated under the Lease *prior* to the surrender of the property in December 2007. In short, the debt for these attorney's fees arose independently from the Debtor's failure to complete its term (or the Lease's termination)." *Id.* On the other side, the Debtors rely primarily on *In re Healthy Hut Inc.*, 506 B.R. 526 (Bankr. D. Haw. 2014), in which the court fully capped a claim for attorney's fees and broker's fees incurred post-termination. Appellants' Reply 9–10. But there was no pre- petition litigation award of fees there as a result of the debtors' breach. The Debtors identify no case where attorney's fees awarded by a court pre-petition for breach of the lease have been capped.

The Debtors also assert that section 502(b)(6) is not a cap on lease termination damages, but a cap limiting all damages arising from breach. Appellants' Opening Br. 6–7. The problems with the Debtors' interpretation are numerous. First, in eliminating lease termination from the statute, the Debtors would cap all damages resulting from breaches of covenants in the lease, effectively rehabilitating the overruled portion of *McSheridan*. Second, the Debtors would render *El Toro*'s test for lease rejection damages meaningless in situations where lease rejection was preceded by breach. Third, the Debtors would create a perverse incentive for debtor-tenants to reject otherwise beneficial leases in order to escape liability for the damages they would owe if the lease were assumed. *See El Toro*, 504 F.3d at 981 ("Interpreting the section 502(b)(6) cap to include damage collateral to the lease would also create a perverse incentive for tenants to reject their lease in bankruptcy . . . ."). This view of section 502(b)(6) is erroneous.

## CONCLUSION

The pre-petition award of attorney's fees and costs was collateral damages and not capped by Section 502(b)(6). The order of the Bankruptcy Court is AFFIRMED.

**IT IS SO ORDERED**.

Dated: August 26, 2014

WILLIAM H. ORRICK
United States District Judge

11